UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

EULOGIO PENA,                                    :

                            Petitioner,          :          **REPORT AND**
                                                            **RECOMMENDATION**
      -against-                                  :          **TO THE HONORABLE**
                                                            **LAURA T. SWAIN**

ISRAEL RIVERA, Superintendent, Coxsackie         :
Correctional Facility,                                      05 Civ. 3109 (LTS)(FM)
                            Respondent.          :

-----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

            Petitioner Eulogio Pena ("Pena") brings this pro se habeas corpus

proceeding, pursuant to 28 U.S.C. § 2254, to challenge his conviction following a jury

trial, in Supreme Court, Bronx County, on one count of Robbery in the First Degree, two

counts of Robbery in the Second Degree, one count of Robbery in the Third Degree, and

one count of Grand Larceny in the Fourth Degree, in connection with a carjacking.  (Pet.

¶¶ 1, 4, 6; Aff. of Ass't Dist. Att'y Alexis Pimentel, dated Nov. 3, 2005 ("Pimentel Nov.

Aff."), ¶ 3).  On February 8, 2001, Justice Troy K. Webber, before whom the case was

tried, sentenced Pena to concurrent terms which, in the aggregate, amounted to a sentence

of sixteen years.  (Pet. ¶ 3; Pimentel Nov. Aff. ¶ 3).  Thereafter on May 30, 2001,

following his plea of guilty to one count of Attempted Assault in the First Degree, arising

out of an unrelated incident, Justice Dominick Massaro sentenced Pena, as a predicate

felon, to a two-to-four year term of imprisonment to be served consecutively. (Pet. ¶¶ 3-6; Pimentel Nov. Aff. ¶ 4).

In his petition, Pena contends that (a) his due process rights were violated by the trial court's failure to sequester the jury over a weekend; (b) his sentences were unduly harsh and should be reduced in the interest of justice; and (c) his second sentence should not have been consecutive. (Pet. ¶¶ 3-6, 12(A)-(C); Pimentel Nov. Aff. ¶ 4).

In addition, after unsuccessfully pursuing a <u>pro</u> <u>se</u> application for a writ of error coram nobis, Pena seeks to amend or supplement his petition to add a claim that his appellate counsel was ineffective for failing to argue on appeal that the trial court had abused its discretion by granting the prosecutor's request to reopen a suppression hearing. (See Docket No. 10 (Mot. to Amend)). Although the Respondent opposed Pena's earlier application for a <u>Zarvela</u> stay to permit him to exhaust that claim, (<u>see</u> Docket No. 6 (Mot. for an Extension of Time); Pimentel Aff. dated Jan. 10, 2006 ("Pimentel Jan. Aff.")), I nevertheless have considered Pena's ineffective assistance claim in this Report and Recommendation.

For the reasons that follow, Pena's petition should be denied. Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Pena should be denied a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.

II.     Background

        The relevant facts are as follows:

A.      Indictment No. 4857/99

        1.      Suppression Hearing

        Justice Webber held a suppression hearing in early October 2000.  (See H. at 65).[1]  Two officers testified at the hearing.  The first, Police Officer Michael Flower, testified that he and his partner responded to a radio call during the early morning hours of August 6, 1999, regarding the hijacking of a "Black Honda del Sol with yellow rims and tv in the console."  (Id. at 69).  When they arrived at 494 East 167th Street in the Bronx, they located this vehicle and found a set of Honda keys near the building. (Id.).  They then entered the back yard of the building, where they found Pena, who matched a description of one of the perpetrators that previously had been provided to them.  (Id. at 69-70).  That description indicated that the perpetrator was a "male Hispanic with blue shorts almost down to his ankles, a white tank top, [and] a grey bandana."  (Id. at 70).  Rather than responding to the officers' directive to stop, Pena fled through a door in the rear of the building which then locked.  (Id.).  After the Emergency Services Unit opened the door, the responding officers found Pena in a boiler room trying to escape through a sewer by dislodging the grate.  (See id. at 71).  Following a short struggle, Pena was arrested, and Officer Flower recovered a gray bandana from his pocket.  (Id.).

_____

        [1]      "H." refers to the minutes of the suppression hearing.  "P." refers to the transcript of Pena's May 30, 2001 guilty plea.  "T." refers to the transcript of the trial.

As these events were unfolding, the second witness, Police Officer Anthony Smalls, brought the carjacking victims to the location.  (Id. at 107-08).  Subsequently, when Pena was brought to the front of the building, both victims confirmed that Pena was one of the carjackers.  (Id. at 71-72, 109).  In post-arrest processing at the 44th Precinct, Officer Flower recovered from Pena's person a jewelry bracelet and sixteen dollars.  (Id. at 140).

Pena sought to suppress the complainants' identifications of him, as well as the bandana and bracelet recovered from his person.  (Id. at 126-27).  Pena's counsel argued that the identification at the arrest location amounted to an unduly suggestive show-up.  (Id. at 127).  Pena's counsel further maintained, in substance, that the arrest which preceded the identification lacked probable cause and warranted suppression of the items seized from Pena.  (Id. at 126-27).  Despite these arguments, at the conclusion of the hearing, Justice Webber denied Pena's motion to suppress, stating that a written decision would be issued.  (Id. at 131).  That written decision is not part of the record.

The following day, prior to jury selection, the prosecutor moved to reopen the previous day's hearing to elicit testimony from Officer Flower regarding the bracelet and money recovered from Pena at the precinct.  (Id. at 133-34).  The prosecutor noted that if the arrest was lawful, the seizures at the precinct, like those at the arrest scene, were proper fruits of a search incident to an arrest.  (Id.).  The prosecutor further noted that the defense could not claim surprise because the additional property had been identified in the People's bill of particulars in November 1999, and in their response to

Pena's motion to suppress.  (Id. at 133).  The prosecutor also noted that she had promptly

notified the court of the mistake on the date of the original suppression hearing.  (Id. at

134).  Although Pena's counsel objected to the reopening of the hearing, the court

permitted the People to recall Officer Flower to correct what the prosecutor claimed was

"an oversight."  (Id. at 135-36).

After hearing brief additional testimony, Justice Webber held that "[t]he

only issue [was] whether . . . there was a search incident to [an] arrest," and that, because

the search followed the arrest, there was no basis to suppress the property recovered at the

precinct.  (Id. at 144).

2.    Jury Deliberations

The jury began its deliberations late in the afternoon on October 18, 2000.

(T. 758).  That night and the following night the jury was sequestered.  (See id. at 762-

762A).  On the afternoon of Friday, October 20, 2000, the court received a note from the

jury stating that it was "hopelessly deadlocked on both defendants."  (Id. at 777-78).  In

response, Justice Webber gave the jury an Allen charge.[2]  (Id. at 785-88).  Because Pena's

co-defendant's counsel was a Sabbath observer, the jury faced the prospect that their

deliberations might not be able to continue on Saturday or Sunday because of the Jewish

holiday of Simchat Torah.  (Id. at 778).  This meant that the jury would be sequestered for

an additional two days without any possibility of making progress.  Recognizing this

_____

[2]        See Allen v. United States, 164 U.S. 492 (1896).

problem, Justice Webber had discussed the possibility that the defendants might waive jury sequestration with counsel prior to delivery of the <u>Allen</u> charge.  (<u>Id.</u>).  Pena, however, was unwilling to do so.  (<u>Id.</u> at 779).

Near the end of the trial day on Friday, Justice Webber informed counsel that he had decided not to sequester the jurors over the weekend, but would give them "special admonitions" as to their duty to cease all deliberations.  (<u>Id.</u> at 788-89).  The reasons Justice Webber gave for this determination were co-counsel's unavailability for the entire weekend because of the religious holiday and a shortage of hotel rooms in the New York area due to the Subway World Series between the New York Mets and New York Yankees.  (<u>Id.</u> at 789-90).  Although Pena's counsel objected on the ground that she would be available over the weekend if the jury were to continue deliberating, (<u>id.</u> at 791), Justice Webber noted that the jury could not be allowed to deliberate as to only one defendant, and that deliberations as to both defendants could not proceed due to co-counsel's unavailability.  (<u>Id.</u> at 791-93).

Both attorneys also objected on the ground that sequestration over the weekend, without any deliberations, was a viable option.  (<u>Id.</u> at 793-94).  Justice Webber explained why he did not pursue this option in a ten-page Decision and Order, which is dated October 20, 2000, but clearly was issued after the jury returned its verdict.  (<u>See</u> Pimentel Nov. Aff. Ex. 11).  In that Decision and Order, Justice Webber noted that the "federal [c]ourts have . . . held that sequestration does not implicate fundamental rights to

a fair trial." (<u>Id.</u> at 6 (citing <u>United States v. Persico</u>, 832 F.2d 705 (2d Cir. 1987), and <u>Powell v. Spaulding</u>, 679 F.2d 163 (9th Cir. 1982)).

After deciding to release the jurors over the weekend, Justice Webber summoned them into the courtroom and explained his decision to them. (T. 795-96). The Justice also instructed the jurors extensively about their obligations, and then asked each juror individually whether he or she would abide by the restrictions. (<u>Id.</u> at 796-800). Each juror responded affirmatively. (<u>Id.</u> at 799-800). When deliberations resumed on October 23, 2000, Justice Webber asked each juror individually whether he or she had followed all of the admonitions. (<u>Id.</u> at 802-05). All of the jurors indicated that they had. (<u>Id.</u> at 804-05). The deliberations then resumed. (<u>Id.</u> at 805).

3.  <u>Conviction and Sentencing</u>

On October 24, 2000, the jury found Pena guilty of all five charges presented for their consideration. (<u>Id.</u> at 818-19). Thereafter, on February 8, 2001, Justice Webber sentenced Pena to concurrent sentences which, in the aggregate, amounted to a sixteen-year term of imprisonment. (Pet. ¶ 3; Pimentel Nov. Aff. ¶ 3). Specifically, Pena was sentenced to sixteen years on the count of Robbery in the First Degree, five years on both of the Robbery in the Second Degree counts, and two to four years on the Robbery in the Third Degree and Grand Larceny in the Fourth Degree counts. (Pimentel Nov. Aff. ¶ 3).

B.    Indictment No. 0873/01

Pena was also charged with the crime of Attempted Assault in the Second

Degree as a result of a gang-related incident which took place at Riker's Island on

November 3, 2000, while Pena was awaiting sentencing on the robbery charges.  (See

Pimentel Nov. Aff. Ex. 5 (Plea and Sentencing Minutes) at 16-17).  On May 14, 2001,

Pena pleaded guilty to that charge before Justice Dominick Massaro.  (Id. at 11-20).

During a conference earlier that day, the court had inquired about a plea

bargain.  (Id. at 3-4).  After the prosecutor stated that the People were offering a two-year

consecutive sentence on a Class E felony, Pena's counsel responded that Pena was not

interested in any deal involving a consecutive sentence.  (Id.).  When the court then asked

whether there was any latitude on this issue, the prosecutor responded mistakenly that a

consecutive sentence was mandated by Section 120.05(7) of the New York Penal Law.[3]

(Id. at 4).

Subsequent to the lunch recess, and after further discussions with his client,

Pena's counsel indicated that Pena was prepared to accept the prosecution's plea offer of

two to four years of consecutive time.  (Id. at 9-10).  After the prosecutor confirmed that

---

[3]        Pena was charged with having violated this statute by committing an assault while
confined in a correctional facility.  This is a Class D felony which is classified as a "violent
felony."  See N.Y. Penal Law § 70.02(1)(c) (McKinney 2004).  Had he been convicted of that
charge, Pena would have faced a mandatory consecutive sentence as a "predicate" felon.  (See
Pimentel Nov. Aff. Ex. 3 at 3 (Massaro Dec.) (citing N.Y. Penal Law § 70.25(5)(a)).  Pena,
however, pleaded guilty to an attempt charge.  An attempted assault by someone confined in a
correctional facility is a lower Class E felony which does not constitute a violent felony and does
not require the imposition of consecutive time.  See N.Y. Penal Law §§ 70.02(1)(d), 110.00,
110.05 (McKinney 2004).

the sentence was to be consecutive, the court confirmed Pena's willingness to plead guilty and then questioned Pena under oath at some length. (See id. at 10-20). At the conclusion of the guilty plea allocution, Justice Massaro accepted Pena's plea of guilty to one count of Attempted Assault in the Second Degree. (Id. at 20).

Thereafter, on May 30, 2001, after adjudicating Pena a predicate felon, Justice Massaro sentenced him to the previously agreed-upon sentence of two to four years to run consecutively to the sentences already being served in connection with the carjacking. (Id. at 23-27).

C.    Procedural History

1.    Motion to Set Aside the Sentence

On or about February 7, 2003, the Legal Aid Society moved to set aside Pena's consecutive sentence, pursuant to Section 440.20 of the New York Criminal Procedure Law ("CPL"), on the ground that the sentence was illegally imposed because both the parties and the court had mistakenly believed that the Penal Law mandated a consecutive sentence. (Pimentel Nov. Aff. Ex. 1).

On May 19, 2003, Justice Massaro denied Pena's motion to set aside the sentence. (Pimentel Nov. Aff. Ex. 3 at 6). In his written decision, the Justice noted that "[t]he absence of the word 'attempt' from the statutory language [requiring a consecutive sentence when a defendant is convicted of assault in the second degree] does not infer a prohibition of court discretion to impose a consecutive sentence upon conviction for attempted assault where otherwise, as here, it is deemed fit." (Id. at 3). The Justice

further observed that, because the crime occurred while Pena was in a correctional facility, but for his plea, Pena could have been tried on a charge of actual assault, a "'D' violent felony," thereby exposing him to "'predicate felon' status and a concomitant statutorily directed component of consecutive sentencing." (Id. at 3 (citing Penal Law § 70.25[5][a])).  The Justice also noted that Pena had two weeks between his plea and the sentencing to "review, reconsider, and raise any objections" regarding the proposed consecutive sentence but failed to do so.  (Id. at 6).  For these reasons, the Justice concluded that the sentence imposed was the product of a "negotiated disposition," and that Pena had made a "knowing and intelligent decision" to accept its terms.  (Id.).

     2.    Direct Appeal

On March 28, 2003, Pena's counsel filed an appellate brief challenging both of Pena's convictions on the grounds that (a) his due process rights were violated when Justice Webber released the jury for the weekend over his objection in violation of CPL § 310.10; (b) his sentences were unduly harsh and should have been reduced in the interest of justice; and (c) his due process rights were violated because Justice Massaro failed to exercise his discretion to impose a concurrent sentence in sentencing him to a two-to-four year consecutive term on the attempted assault charge.  (Pet. ¶ 9(d); Pimentel Nov. Aff. Ex. 4, at i-ii).

On October 30, 2003, the Appellate Division unanimously affirmed both judgments of conviction, as well as the order denying Pena's motion to set aside the sentence.  People v. Pena, 766 N.Y.S.2d 196 (1st Dep't 2003).  The court noted that

Justice Webber's decision to release a deliberating jury over the weekend was contrary to the language of CPL § 310.10(2) in force at the time, but that cases on direct appeal generally are decided in accordance with the law in effect at the time the appellate decision is made. Id. In that connection, the court observed that CPL § 310.10 had been amended in 2001 to allow a trial judge to declare a recess (and therefore allow a deliberating jury not to be sequestered) without the defendant's consent. See id. The court applied this amendment retroactively to Pena's appeal because it was "procedural, and neither create[d] a new crime,[nor] ma[de] the punishment for a crime more burdensome, nor deprive[d the] defendant of a defense." Id.

The Appellate Division further concluded that there was no basis for reducing Pena's sentences. Id. Indeed, the court held that even if Justice Massaro mistakenly believed that he lacked the discretion to impose a concurrent sentence, there was "no need to remand for resentencing because [he had] expressed no reservations about the sentence." Id.

By letter dated November 21, 2003, Pena's appellate counsel sought leave to appeal to the New York Court of Appeals on Pena's behalf. (Pimentel Nov. Aff. Ex. 9). That application was denied on March 15, 2004. People v. Pena, 2 N.Y.3d 744 (2004).

3.      <u>Habeas Proceeding</u>

Pena's habeas petition was timely received by the Pro Se Office of this Court on March 9, 2005.  (<u>See</u> Docket No. 1 at 1).  In his pro se petition, Pena reasserted each of the grounds that he raised on direct appeal.  (Pet. ¶¶ 12(A)-(C); Pimentel Nov. Aff. Ex. 4 at i-ii).  The respondent filed opposition papers on November 23, 2005.  (Docket No. 5).

On December 6, 2005, Pena filed a motion for an extension of time to reply and to file an amended or supplemental petition.  (Docket No. 6).  In his papers, Pena contended that the additional time was necessary to allow him to seek a writ of error coram nobis based on his appellate counsel's alleged ineffectiveness in failing to challenge the trial court's reopening of the suppression hearing.  (<u>See</u> Mot. for Ext. of Time at 1-2).  On January 18, 2006, the respondent filed papers in opposition.  (Docket No. 8).  Before this motion could be considered, Pena exhausted his remedies with respect to this issue in state court.  (<u>See</u> Docket No. 10 (Mot. to Amend) Ex. A at iii (indicating that Pena's coram nobis petition was denied on April 18, 2006, and that leave to appeal was denied on June 28, 2006)).

On July 13, 2006, Pena filed a motion to amend his petition to include his ineffectiveness claim.  (<u>Id.</u>).  Included with his papers is a memorandum of law addressing the substance of his ineffective assistance of counsel claim.  (<u>Id.</u>).  Because this issue is ripe for consideration, I have addressed it in this Report and Recommendation even though Pena arguably would not have been entitled to a <u>Zarvela</u>

stay to exhaust this claim.  See Rhines v. Weber, 125 S.Ct. 1528, 1535 (2005) (a stay and

abeyance is not warranted when the unexhausted claims are plainly meritless); see also 28

U.S.C. 2254(b)(2) (court may deny petition on the merits notwithstanding petitioner's

failure to exhaust remedies).

III.    Discussion

    A.    Standard of Review

        A habeas corpus petition is not a vehicle to relitigate every issue previously

determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state

prisoner seeking habeas relief under Section 2254 must show that he is "in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  "The petitioner bears the burden of proving[,] by a preponderance of the

evidence[,] that his constitutional rights have been violated."  Jones v. Vacco, 126 F.3d

408, 415 (2d Cir. 1997).

        Section 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>         (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. <u>Id.</u> at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Stinson</u>, 229 F.3d. at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

14

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  Williams v. Taylor, 529 U.S. at 389.

B.    Jury Sequestration

Pena contends that the trial court violated his due process rights by releasing a sequestered deliberating jury for the weekend.  (Pet. ¶ 12(A)).  As the Appellate Division noted, at the time of Pena's trial, CPL § 330.10 required that a jury be sequestered during its deliberations with respect to certain felonies, including the Class B violent felonies with which Pena was charged.  See CPL § 310.10[2] (amended 2001) (McKinney 2002).  In 2001, however, the statute was amended to allow for release of the jury "at any time after the jury has been charged or commenced deliberations" without regard to the specific crime charged.  Id.  The Appellate Division retroactively applied the amended statute to Pena's claim and, on that basis, held that Justice Webber had acted properly.  Pena, 766 N.Y.S.2d at 196.

In federal criminal trials, the general practice is not to sequester jurors.  See United States v. Siragusa, 450 F.2d 592, 594-95 (2d Cir. 1971) (proper to permit jurors who had indicated that they were deadlocked to disperse for the weekend and reconvene on Monday despite defense counsel's objection); United States v. Breland, 376 F.2d 721, 724 (2d Cir. 1967) (stating that "sequestration during criminal trials has become the exception"); Cheng v. Greiner, No. 02 Civ. 4804 (DC), 2003 WL 22801348, at *5

(S.D.N.Y. Nov. 25, 2003) ("Sequestration of a jury is not constitutionally required."); see also United States v. Salerno, 868 F.2d 524, 540 (2d Cir 1989) ("The decision to sequester the jury to avoid exposure to publicity is committed to the discretion of the court, and failure to sequester the jury can rarely be grounds for reversal.").  The law of many states is the same.  See Holt v. United States, 218 U.S. 245, 250-51 (1910).  Since federal law and the laws of many states do not require that juries be sequestered, Pena's petition plainly cannot be granted on the theory that a lack of sequestration required by New York law denied him his due process rights.

Additionally, the Appellate Division did not violate Pena's rights when it applied the amended statute retroactively to Pena's direct appeal.  In Collins v. Youngblood, 497 U.S. 37, 42 (1990), the Supreme Court held that an ex post facto law is one which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission[;] or which deprives one charged with crime of any defense available according to law at the time when the act was committed."  Id. (quoting Beazell v. Ohio, 269 U.S. 167, 169 (1925)).  In its decision, the Appellate Division correctly concluded that the amendment of CPL § 310.10(2) which made sequestration discretionary could be applied retroactively because it did not fall into any of these proscribed categories.  Pena, 766 N.Y.S.2d at 196.

Finally, as the Appellate Division noted, the amended statute merely gives discretion to the trial court to allow a jury to separate at any time after it has commenced its deliberations without securing the defendant's consent.  See id.  Here, that discretion

16

was exercised properly since the only alternative would have been to sequester the jury for a two-day period without any deliberations, and it was not even clear that this could be done while the World Series was underway.

For these reasons, there is no basis for Pena's jury sequestration claim.

C.    Sentencing Claims

Pena claims that the sixteen-year sentence that Justice Webber imposed is "unduly harsh" and should be reduced in the interest of justice in light of his allegedly limited criminal record, employment history, and strong family and community ties.  (Pet. ¶ 12(B)).  If his due process argument with respect to his two-to-four year consecutive sentence is not accepted, Pena also argues, in the alternative, that this sentence also was unduly harsh and should be reduced in the interest of justice.  (Id. ¶ 12(C)).

These sentencing claims are not cognizable on federal habeas review. Pena's sixteen-year sentence was the product of his conviction on a count of Robbery in the First Degree, a Class B violent felony offense, for which the minimum and maximum sentences are, respectively, five and twenty-five years.  N.Y. Penal Law §§ 70.02(1)(a), (2), (3) (McKinney 2004) & 160.15 (McKinney 1999).  Pena's two-to-four-year sentence resulted from his plea of guilty to one count of Attempted Assault in the Second Degree, a Class E felony, and subsequent concession that he was a predicate felon.  Based on that status, Justice Moore was required to impose a sentence of no less than one and one-half and no more than four years.  Id. §§ 70.00(2)(e), 70.06, 110, 110.05, 120.05(7).  Although the attempted assault sentence was consecutive, Section 70.25 of the Penal Law, insofar

as relevant, only requires concurrent sentences when two or more offenses were committed through "a single act or omission." Id. § 70.25 (McKinney 2004). Here, of course, the charge to which Pena pleaded guilty was entirely unrelated to the carjacking. Accordingly, the Penal Law permitted Justice Massaro to impose a consecutive sentence.

Accordingly, because each of the sentences that actually were imposed were within the ranges prescribed by state law, Pena's claims that his sentences were unduly harsh or should have been concurrent do not present a federal constitutional issue cognizable on habeas review. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)); Robles v. Senkowski, No. 97 Civ. 2798 (MGC), 2002 WL 441153, at *10 (S.D.N.Y. Mar. 21, 2002) (citing White).

Pena also contends that the trial court violated his due process rights because of its mistaken belief that a consecutive sentence for the attempted assault conviction was mandated. (Pet. ¶ 12(C)). The short answer to this claim, as Justice Massaro has noted, is that this is "a misimpression . . . unsupported by the record." (Pimentel Nov. Aff. Ex. 3 at 4). In any event, even if Justice Massaro had been operating on a mistaken assumption, the sentence in this case was the result of a plea negotiation in which the prosecutor apparently insisted on a consecutive sentence. (See id. ("Both parties at the time of final agreement as well as at the time of sentencing, were fully cognizant that consecutive sentencing was integral to disposition.")). By agreeing to plead to Attempted Assault in the Second Degree and accept a consecutive sentence, Pena

18

avoided a "violent felony" conviction, which would, in any event, have required a consecutive sentence.  (See n.3, supra).  It is clear from the guilty plea allocution that he understood the sentencing consequences of the plea agreement which gave him this benefit.  (See Pimentel Nov. Aff. Ex. 5 at 18-20).  Indeed, even at Pena's sentencing, when his counsel asked the court to follow through on its earlier "promise" to sentence Pena to a two-to-four-year sentence, Pena did not express any lack of satisfaction with this disposition.  (Id. at 26).

Finally, it is clear that Justice Massaro did not abuse his discretion in imposing a two-to-four-year consecutive sentence following Pena's guilty plea.  As Pena conceded during his plea, within days after his conviction in the carjacking case, he had an encounter with a fellow inmate who was "a Blood" with whom he did not "get along." (Id. at 18).  During this altercation, Pena stabbed the other inmate with a sharpened "metal piece."  (Id.).  If Justice Massaro had imposed a concurrent sentence for this unrelated crime, it would have sent the message – conveyed all too frequently until recent years – that inmate-on-inmate assaults by convicted felons would not have serious consequences.  It certainly was not an abuse of discretion for Justice Massaro to confirm, instead, that violence in the City's jails would not be tolerated.

In sum, the sentences that were imposed on Pena fell within the statutory limits and were not unduly harsh.  Moreover, the sentence arising out of the stabbing has not been shown to be the product of a misunderstanding by the court and, in light of the surrounding circumstances, was not an abuse of discretion.

D.    Ineffective Assistance of Appellate Counsel

Pena's final claim is that his appellate counsel was ineffective for failing to raise on direct appeal the claim that the trial court had abused its discretion by reopening the suppression hearing to permit the prosecutor to elicit testimony from Officer Flower regarding the property recovered from Pena's person at the precinct.  (See Mot. to Amend).

In order to prevail on an ineffective assistance of counsel claim, a defendant must demonstrate (a) that his counsel's performance "fell below an objective standard of reasonableness" and (b) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  The Strickland standard applies not only to trial counsel, but also to an attorney handling a defendant's appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 395-96 (1985); Aparicio, 269 F.3d at 95.  However, in preparing a brief, appellate counsel is not required to raise every claim arising out of a trial, and has the discretion to eliminate weaker ones.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("counsel does not have a duty to advance every nonfrivolous argument that could be made").  Furthermore, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.

In order to satisfy the first prong of the Strickland standard, Pena therefore must show that appellate counsel did something more than omit a nonfrivolous argument

that Pena wished to pursue.  See Jones, 463 U.S. at 753-54; Aparicio, 269 F.3d at 95.  He

must establish that counsel opted not to raise "significant and obvious issues while

pursuing issues that were clearly and significantly weaker."  Mayo, 13 F.3d at 533; Bragg

v. Kuhlman, No. 97 Civ. 3025 (SHS), 1998 WL 867245, at *3 (S.D.N.Y. Dec. 14, 1998)

(citing Benn v. Stinson, 917 F. Supp. 202, 206 (S.D.N.Y. 1995)).

        Under New York law, a trial court has the discretion to reopen a

suppression hearing at the prosecution's request.  See Tirado v. Walsh, 168 F. Supp. 2d

162, 171 (S.D.N.Y. 2001) (citing People v. Mercado, 62 N.Y.2d 866 (1984)); see also

People v. Widgeon, 757 N.Y.S.2d 267, 268 (1st Dep't 2003) ("The court appropriately

exercised its discretion in reopening the Wade hearing to permit the People to introduce a

lineup photograph that was mistakenly omitted at the initial hearing.").  The prosecution's

right to a rehearing however, is not without limitation.  People v. Havelka, 45 N.Y.2d

636, 643 (1978).  "Generally, where 'no contention is made that the People had not had a

full opportunity to present evidence . . . there is no justification . . . to afford the People a

second chance to succeed where once they had tried and failed."  Id. (quoting People v.

Bryant, 37 N.Y.2d 208, 211 (1975)).

        One of the justifications for limiting the prosecution's right to a rehearing is

the danger of "tailoring [of] the evidence at the rehearing to fit the court's established

requirements."  Widgeon, 757 N.Y.S.2d at 268 (quoting Havelka, 45 N.Y.2d at 643-44).

Another concern is that if the prosecution's right to reopen a hearing is not limited, "[a]

defendant [who] prevailed at the hearing, would be haunted by the specter of renewed

proceedings." Havelka, 45 N.Y.2d at 643. Consequently, in exercising its discretion, the trial court must consider several factors, including the timing and basis of the motion to reopen the hearing. See Tirado, 168 F. Supp. 2d at 171; People v. Whitmore, 785 N.Y.S.2d 140 (3d Dep't 2004); Widgeon, 757 N.Y.S.2d at 268.

In this case, there was no risk that the police officer's testimony would change to improve the prosecution's chance of success. In fact, Justice Webber had already ruled that Pena's suppression motion would be denied. Moreover, the prosecution was not seeking to explore a new area which came as a surprise to Pena or his counsel. Instead, the prosecution was simply seeking to introduce two additional items of evidence which were admissible on the same basis as the other items about which officer Flower previously had testified. The record is devoid of any suggestion that Pena disputed the fact that these additional items had been seized from him shortly after his arrest. Moreover, he was not prejudiced by the timing of the application to reopen. In fact, the prosecution made its request on the date of the original hearing. (H. at 132). Furthermore, the defense had known for many months about the additional items and the prosecution's intention to use them at trial. (Id. at 133-34).

Given these circumstances, the decision to reopen the hearing was not an abuse of discretion. Additionally, because the claim underlying Pena's ineffective assistance of appellate counsel claim is without merit, Pena cannot show that counsel's failure to raise that claim on appeal was unreasonable or prejudicial. See United States v.

<u>Kirsh</u>, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance.").

IV.    <u>Conclusion</u>

For the foregoing reasons, Pena's habeas petition should be denied.  Also, because Pena has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a) and (e).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura T. Swain, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Swain.  The failure to file these timely objections will result in a waiver

of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:     New York, New York
          July 31, 2006



                FRANK MAAS
           United States Magistrate Judge

Copies to:

Hon. Laura T. Swain
United States District Judge

Eulogio Pena
# 01-A-1449
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

Alexis Pimentel
Office of the District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451

24